# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### PULLMAN CO. v. WALN et ux.

(Circuit Court of Appeals, Third Circuit. March 10, 1925.)

No. 3204.

**1. Carriers ⊙⟶414—That railroad was liable to passengers occupying Pullman car does not relieve Pullman Company of duties assumed or chargeable to it.**

That railroad company may be liable as common carrier to passengers occupying Pullman car does not relieve Pullman Company from any duty it may have assumed or been charged with by reason of its joining railroad in joint enterprise.

**2. Carriers ⊙⟶414—That Pullman Company would not allow passengers to ride on their car unless they had purchased tickets of railroad shows joint enterprise.**

That Pullman Company would not allow passengers to ride on their car unless they had purchased transportation tickets from railroad shows a joint enterprise.

**3. Carriers ⊙⟶414—Pullman Company liable for nonperformance of any duty imposed by railroad or assumed by it.**

Pullman Company, engaging in joint enterprise with railroad, is liable to passengers for failure to perform any duty imposed by railroad or assumed by it which contributed to safety of passengers while in transit.

**4. Carriers ⊙⟶414—Pullman Company held not relieved from duty to keep doors closed while train was in motion by railroad's requirement that conductor make tour of train to see that such doors were closed.**

That railroad rule required conductor to pass through train and see that all vestibule doors were closed *held* not to relieve Pullman Company from its duty under rules imposed by railroad to see that outside and trap doors were closed while train was in motion.

**5. Carriers ⊙⟶416—That side and trap doors of Pullman car were left open held to warrant jury inferring Pullman Company's lack of care.**

That side and trap doors were let open, and resulted in injuries to Pullman car passengers,

*held* facts from which jury could infer lack of care on part of Pullman Company in performing part of common joint duty to traveler in which it had united with railroad.

**6. Carriers ⊙⟶414—Passenger injured through failure of Pullman employees to close vestibule doors held entitled to recover of Pullman Company.**

Passenger, who fell from moving train through failure of Pullman Company's employees to close side and trap doors to vestibule of car as soon as train was put in motion, and husband *held* to have right of action against Pullman Company alone.

**7. Carriers ⊙⟶416—Pullman and railroad companies' rules relative to closing of vestibule doors held admissible in action against Pullman Company for personal injuries.**

In action by husband and wife against Pullman Company for injuries sustained by wife from fall from moving train, through failure of Pullman employees to close doors in vestibule of car, agreement between companies and rules of both Pullman and railroad companies affecting duty to close such doors *held* admissible.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Action by Jacob S. Waln and wife against the Pullman Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Thomas F. Gain, Francis Shunk Brown, and J. Frederick Jenkinson, all of Philadelphia, Pa., and George A. Kelly, of Chicago, Ill., for plaintiff in error.

John Lewis Evans, of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This case concerns the liability of the Pullman Company to a passenger. The facts are not in

dispute; the question involved is the inference to be drawn from them.

Jacob S. Waln and wife, hereinafter called plaintiffs, bought railroad and parlor car tickets, and took passage from Philadelphia to Washington. The train was operated by the Pennsylvania Railroad, and the car in which they went was owned by the Pullman Company, hereinafter called the defendant. It was next to the engine. Back of it were three other Pullman cars, and next to them a dining car of the railroad, and back of it six railroad day coaches. The plaintiffs had gone through the vestibuled Pullman cars to the diner, had finished their lunch, and were returning to their car about the time the train was leaving Baltimore. About 1,900 feet from the Baltimore station the train entered a long tunnel, and, while the plaintiffs were passing through the vestibule between the second and third Pullman cars, Mrs. Waln, as the proofs showed, "just went right out backwards; she apparently dropped into space." She was later found in the tunnel, some 600 feet from the entrance, and on the left-hand side of the train. The testimony of Mr. Waln was as follows: "Q. Then tell what you did at each car? A. As we came to the door I opened the door of the car, still holding on to Mrs. Waln, and she walked just ahead of me, rather a few steps ahead of me. I was rather alongside of her, just helping her across one platform to another. Q. How many cars did you walk through? A. We walked through two cars. Q. Two Pullman cars in addition to the diner? A. In addition to the diner. Q. What happened as you got to the front of the second car you walked through? A. Well, I got there, and I opened the door, and allowed Mrs. Waln to go forward just ahead of me. I still had hold of her, just guiding her or holding her with my left hand on her right arm. As we stepped over from one platform to the other there was just a little smoke or steam coming up between the cars, and as I stepped onto the rear platform of the car we were about to enter. Q. Was that a vestibule car also? A. It was a vestibule car. I stepped, with Mrs. Waln stepping ahead of me, from one platform to the other, and there was a little steam or smoke, whatever it might be, and as I leaned forward I realized it was coming up around me, and I moved forward to open the door into the car we wanted to enter. Q. Where was the door, on which side? Was it towards your right or left? A. The door knob was on the left-hand side of the door. Q. Just explain what you did. A. I leaned forward this way (indicating) to open the door. I had hold of Mrs. Waln, and she stepped that way (indicating) to give me a little better opportunity to touch the knob, and at that instant she just went right out backwards. She apparently dropped into space. She did drop into space. I held on very, very, tight, as tight as I could, so much so that I dislocated my finger holding on, and she just disappeared from sight out backwards, and I saw her going down through smoke and steam. It was all just done like that. * * * Q. Which side had Mrs. Waln fallen off? A. Mrs. Waln had fallen off the left-hand side of the train. Q. And was that door still open when you came back there? A. No, when we came back that door was closed, the platform was closed and the upper door was closed. Q. At the time Mrs. Waln fell off what was open there? A. The platform was up and the door was open. Q. So that there was nothing to protect the steps? A. Nothing. The steps were not protected." The testimony of Mrs. Waln was substantially to the same effect. Subsequently the plaintiffs brought suit against the Pullman Company to recover damages, and, on trial, there were verdicts for both for the damages each had sustained by reason of the injury to Mrs. Waln.

[1-3] The Pullman Company defended on the ground of the contributory negligence of the plaintiffs; that it owed no duty to Mrs. Waln outside of the car; and that the open door, through which Mrs. Waln fell, was not its negligence, but the negligence of the railroad. In taking up the question of the defendant's liability, the basic question, of course, is the relation the Pullman and the Pennsylvania severally bore to the plaintiffs. As the railroad had sold them tickets and accepted them as passengers, its duty was that of a common carrier. But the fact that the railroad was liable to them in this relation does not relieve the Pullman Company from any duty it may have assumed or been charged with by reason of its joining the railroad in their carriage. That it was a joint undertaking is shown by the fact that the Pullman Company would not allow the plaintiffs to ride on their car unless they bought transportation tickets from the railroad. Seeing then the Pullman and the Pennsylvania were working in a joint enterprise, and on that basis the plaintiffs were traveling and paying both their several ticket money, it is clear, in the nature of things, that, if the railroad company imposed and the Pullman Company undertook to perform any duty

which contributed to the safety of the plaintiffs while in transit, the latter were entitled to the performance thereof by the Pullman Company, and, if the latter failed to perform that duty, it was, to that extent, guilty of negligence, which is but due care under the circumstances of a particular case.

Turning then, to the joint agreements under which the two companies undertook to perform joint service and to the rules adopted by them, it appears the Pullman Company agreed that its "employees shall be governed by and subject to the rules and regulations of the railroad company now in force, or which may hereafter from time to time be adopted."

The rules of the railroad provided: "On through passenger trains with vestibule cars, the side and back doors must be kept closed between stations * * * on all trains, side and trap doors must be kept closed in tunnels. Pullman employees must comply with these instructions for Pullman cars. When trainmen open side and trapdoors of the Pullman cars, while in discharge of their duties, they must close them."

[4] In addition to these rules made by the railroad, Pullman Company also issued as "Instructions for employees on cars of the Pullman Company" as follows: "When train is in motion, vestibule and trap doors must be kept closed. When vestibules are opened at stations, care should be taken to see that doors and traps are carefully latched. * * * When cars are coupled together, employees will see that the vestibule curtains are properly fastened." From this it will be seen that as between the railroad and the Pullman the latter was given power and control over the vestibules, and both parties, the railroad by its rules and the Pullman by its instructions, made the closing and latching of the doors and traps of vestibuled Pullman cars the duty of the Pullman employees. That the railroad company further provided that "when trainmen open side and trap doors of the Pullman cars, while in discharge of their duty, they must close them," and that "conductors of Southward passenger trains, when leaving Union Station, Baltimore, must get on one end of the train and pass through to the other end as quickly as possible to see that all vestibule doors have been closed, which should be done before entering B. & P. Tunnel," did not relieve the Pullman Company from its duty under the rules cited above, but was an added safeguard of the railroad for the safety of the passenger through the conductor's inspection at tunnels.

[5, 6] The case was not one where the happening of the accident was invoked to show negligence, but the open door and trap were the proven facts which caused the accident. This door and trap could not have been open if those charged with their oversight did their duty, for by the rules we think the Pullman Company was given the same control and oversight of the vestibule as over the inner body of the car. That the door was left open and caused the accident were facts from which a jury could infer there was a lack of care on the part of the Pullman Company in performing its part of a common joint duty to the traveler in which it had united with the railroad and for which it had been paid by such traveler. That the railroad was also liable to the passenger, under its general duty of a common carrier, in no way lessens the obligation of the Pullman Company when called on by the traveler to answer for its lack of care and due oversight over the vestibule which under the governing rules it was its duty to guard. What the relative rights and liabilities of the railroad and the Pullman Company are in reference to this accident is not here involved; the question before us is solely whether the plaintiffs had a right of action against the Pullman Company, and, under the facts of this case, we hold they had, and the case was one for the jury.

[7] We may add we think the agreement between the companies and their pertinent rules were admissible in evidence. The question of the alleged contributory negligence of the plaintiffs was one which the jury, not the court, had to decide.

Finding no error, the judgment is affirmed.